UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                               Case Number 14-20019

v.                                                 Honorable David M. Lawson

TOMMY EVERETT GOODSON,

        Defendant.
_____/

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE

Defendant Tommy Goodson filed a motion asking the Court to reduce his sentence to time served under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239. Goodson has served approximately 76 months of a 151-month prison sentence for bank robbery. He argues that a sentence reduction is justified by his age (51) and his medical conditions (hypertension, obesity, acid reflux, latent tuberculosis, allergies, chronic kidney disease, and type II diabetes) coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting. The government concedes that Goodson's obesity and type II diabetes are medical risk factors that may amount to an extraordinary and compelling reason for release, but it maintains that he would be a threat to public safety if released. Although those conditions coupled with the threat of a COVID-19 infection may amount to "extraordinary and compelling reasons [to] warrant such a reduction," as section 3582(c)(1)(A)(i) requires, consideration of the factors in 18 U.S.C. § 3553(a) do not favor early release. Because Goodson has not demonstrated that immediate release is appropriate or that he qualifies for release under any other provision of section 3582(c)(1), the motion will be denied.

I.

Goodson pleaded guilty to three counts of bank robbery in violation of 18 U.S.C. § 2113(a). On September 11, 2014, the Honorable Avern Cohn sentenced the defendant to 151 months in prison, to be followed by three years of supervised release. Goodson surrendered to the custody of the Bureau of Prisons on September 11, 2014, and he presently is confined at FCI Gilmer, in West Virginia, which is a medium-security facility that houses around 1,400 inmates. Public records of the BOP indicate that the defendant is scheduled to be released from prison on October 29, 2024. Goodson is 51 years old.

On August 26, 2020, Goodson submitted an administrative request for compassionate release, which the warden at FCI Gilmer denied on September 1, 2020. On November 13, 2020, Goodson filed a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.

The most recent data disclosed by the BOP indicates that there are 10 active coronavirus cases among inmates and 29 among staff at the Gilmer facility. In addition, 291 inmates and 33 staff members previously were diagnosed and now have recovered. Reports indicate that no inmates or staff have died from the virus. *See* https://www.bop.gov/coronavirus/.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of

Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). Goodson relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered

§ 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, --- F.3d ---, No. 20-3654, 2021 WL 50169 (6th Cir. Jan. 6, 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 2021 WL 50169 at *1 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at *2. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.*

In its response to the motion, the government disagreed with this holding in *Jones*, called the decision "incorrect," labeled that holding "*dicta*," and urged this Court not to follow it. The *Jones* court did not see its decision that way, concluding that the application of section 3582(c)(1)(A) requires a sequential analysis, with consideration of the 3553(a) factors coming last in the sequence. *Jones*, 980 F. 3d at 1106 (reiterating that "a district court must make the two requisite 'find[ings]' before weighing the applicable § 3553(a) factors") (citing *Ruffin*, 978 F.3d at 1003–06). Because the district court did not address the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13, the court of appeals held that it had to decide whether "the district court improperly refuse[d] to consider § 1B1.13 per the second step of § 3582(c)(1)(A)'s test." *Id.* at 1108. That holding was necessary to the decision of the case. The government may not like the

*Jones* court's answer to the question it posed, but calling it *dictum* misrepresents that holding in that case. The government has taken that position in at least two other cases before this Court. And the Court called out the government for promoting that same misrepresentation in another case. *See United States v. Terrell White*, --- F. Supp. 3d. ---, No. 18-20183, 2020 WL 7240904, at *2 (E.D. Mich. Dec. 9, 2020).

The Sixth Circuit has since reaffirmed its holding in *Jones*, as noted above, in *Elias*, 2021 WL 50169, at *2. The government filed a notice of supplemental authority, calling attention to *Elias*, and stating that the case "impacts the government's reasoning." However, the government has neither withdrawn its argument nor sought to correct it to reflect accurately the governing circuit law. And so the Court must again point out that "[e]thical lapses by the Executive Branch like this do not advance the cause of justice, irrespective of the underlying merits of the motion." *White*, 2020 WL 7240904, at *2.

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

B.

Addressing the first element — extraordinary and compelling reasons — Goodson argues that his age and medical conditions expose him to an elevated risk of complications from the highly-contagious novel coronavirus. In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not*

have COVID-19 (because [other] medical issues put [him or her] at risk of contracting the virus)." *Jones*, 980 F.3d at 1106 n.6.

The defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ibid.* (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassiter*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease;

obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16).  It is appropriate to consult the CDC guidelines and other "scientific journal[s]" when determining whether extraordinary and compelling reasons exist. *Elias*, 2021 WL 50169, at *4.

Goodson's age (51) and hypertension do not provide extraordinary or compelling reasons for the defendant's release.  He is under the CDC's identified high-risk age of 65. *Ibid.*  And it is unclear how much of a role the defendant's hypertension may play.  The CDC states that individuals with hypertension "*might* be at an increased risk for severe illness from COVID-19." *People with Certain Medical Conditions*, *supra* (emphasis added). "Drilling down, though, that condition is grouped with 'serious heart conditions' that predispose a person to higher risks of complications.  Also included are 'heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension.'" *United States v. Watkins*, 2020 WL 5035111, at *4 (E.D. Mich. Aug. 11, 2020) (quoting *People with Certain Medical Conditions*, *supra*). Although the defendant has been diagnosed with hypertension, for which he was prescribed medication, he does not argue to suffer from pulmonary hypertension or any other types of heart disease.

Nevertheless, the government concedes that the defendant is severely obese and diabetic, conditions that increase his risk of developing a severe COVID-19 infection.  Goodson stands at about 5'7" and his weight ranged from 355 to 376 pounds, meaning that his BMI ranged from 55 to 59.  Medical Records, ECF No. 28, PageID.205.  Most recently, his BMI hovered around 59 in March 2020.  The CDC's guidelines advise that individuals who suffer from type II diabetes or are severely obese (BMI of 40 or greater) are among those with the "strongest and most consistent

evidence" of severe illness from COVID-19. *Scientific Evidence for Conditions that Increase Risk of Severe Illness*, Ctrs. for Disease Control and Prevention (Nov. 2, 2020), https://bit.ly/34aDRY6. The government concedes that "Goodson has shown 'extraordinary' reasons for release" in light of the heightened risk that Covid-19 poses to someone with obesity and diabetes.

Goodson also complains about how the BOP handled the pandemic. He asserts that after his cellmate came down with a fever, the BOP placed Goodson in quarantine twice "without any additional protections and was in fact denied his shower shoes when he expressed concerns about getting sick in the showers." He further alleges that "[b]oth he and his cellmate had tested positive" for COVID-19. But his medical records contradict that assertion. The defendant contends that he was placed in quarantine around October 2020. But his medical records reflect that the BOP regularly tested him for the virus during that time and that he always tested negative. The BOP most recently tested him on November 17, 2020 and reported a negative result on November 23. Although the BOP could have provided the defendant with shower shoes, its precautionary measures of placing the defendant in quarantine appears to have accomplished its intended effect.

C.

Despite the defendant's satisfactory showing of extraordinary medical risk, early release is not justified in this case because the relevant section 3553(a) factors weigh heavily against discharging him into the community.

The government insists that compliance with the Sentencing Commission's policy statement on compassionate release is mandatory, pointing to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. That argument, however, is a dead letter after the Sixth Circuit's decision in *Jones*, 980 F.3d at 1109 ("Until the Sentencing Commission

updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion.").

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

Goodson's crime is serious. Although he was not armed at the time, he robbed three banks by presenting handwritten notes to bank tellers, which threatened death if they did not comply. Moreover, his criminal history includes multiple felony and misdemeanor convictions for burglary, grand and petit theft, conspiracy to commit robbery with a weapon, robbery with a weapon, sale of a fraudulent controlled substance, resisting arrest, obstruction of justice, grand theft auto, sale of cocaine, escape, and bank robbery. At the time of this offense, Goodson was on parole to Michigan for multiple bank robberies committed in 1993 and 2007. In light of his significant criminal history, the BOP finds that he presents a high risk of recidivism.

Judge Cohn determined at the time of sentencing that the 151-month prison sentence was necessary to achieve the goals of sentencing Congress identified in 18 U.S.C. § 3553(a). One of those goals, undoubtedly, was protection of the public. Since his incarceration, the defendant received three minor disciplinary reports for abusing his phone privileges. The sentencing judge

imposed a sentence that was not greater than necessary to achieve congressional goals. Reducing the defendant's sentence by almost four years would not promote respect for the law or provide a just punishment for the defendant's crime. Nor would it serve as a significant deterrent to others; to the contrary, it severely would undermine the goals of both specific and general deterrence, which is of particular concern with a defendant who has demonstrated his enterprising resourcefulness in flouting the law.

Consideration of the factors in 18 U.S.C. § 3553(a) weighs heavily in this case against granting any reduction in sentence, and those factors foreclose relief, even in light of the modest outbreak of Covid-19 at FCI Gilmer. Although the defendant's obesity and diabetes put him at risk, his past criminal conduct and his commission of the present offenses while on parole for similar crimes cast grave doubt on his inclination to be law abiding and conform to the norms of society. On similar facts, notwithstanding an inmate's demonstration of elevated medical risk, this and other federal courts readily have denied compassionate release motions by defendants who were convicted of serious drug crimes and had served less than half of their custodial terms. *E.g.*, *United States v. Lamar*, No. 18-20183, 2020 WL 7319431, at *4 (E.D. Mich. Dec. 10, 2020); *United States v. White*, No. 18-20183, 2020 WL 7240904, at *4 (E.D. Mich. Dec. 9, 2020); *United States v. Douglas*, No. 16-20436, 2020 WL 7225773, at *4 (E.D. Mich. Dec. 7, 2020); *United States v. Benge*, No. 12-59, 2020 WL 5845892, at *4 (E.D. Ky. Oct. 1, 2020); *United States v. Myers*, No. 18-20633, 2020 WL 4934343, at *3 (E.D. Mich. Aug. 24, 2020). There are no facts apparent in this record suggesting that a different outcome is warranted here.

III.

Goodson has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

Accordingly, it is **ORDERED** that the defendant's motion for compassionate release (ECF No. 51) is **DENIED**.

s/David M. Lawson<br>DAVID M. LAWSON<br>United States District Judge

Dated:   January 28, 2021